**Electronically Filed
Intermediate Court of Appeals
30685
23-FEB-2012
08:16 AM**

NO. 30685


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


HEATHER AIONA-AGRA, Plaintiff-Appellee, v.
JAYSON JAVIER AGRA, Defendant-Appellant


APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(FC-D 06-1-0044)


SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Reifurth and Ginoza, JJ.)

Defendant-Appellant Jayson Javier Agra (Husband)
appeals from the decree granting a divorce (Divorce Decree) to
Plaintiff-Appellee Heather Aiona-Agra (Wife) and the child
support order entered on July 21, 2010, by the Family Court of
the Third Circuit (family court).[1]

Husband sought to enforce an agreement that he and Wife
signed during a voluntary mediation session after she filed for
divorce. Under one term in the agreement, Husband would give
Wife an "equalization payment" in exchange for her surrendering
any rights to the couple's residence, which Husband had purchased
before marriage but while the couple lived together. Wife argued
she had been fraudulently induced into the agreement because
during the mediation, Husband had represented that he had
obtained an appraisal that valued the residence significantly
lower than an earlier appraisal. The family court concluded the

---

[1] The Honorable Anthony K. Bartholomew presided.

mediation agreement was unenforceable because: (1) it was fraudulently induced; (2) it was unconscionable where "its presumed result would be unjustly disproportionate;" and (3) because Husband's purported statements during mediation created an "unfair surprise" regarding the value of the marital property. After rejecting the mediation agreement, the family court divided the property as Category 5 property.

On appeal, Husband alleges[2] the family court erred by: (1) creating a "circular decision" when it added footnotes to its Decision and Findings of Fact/Conclusions of Law (FOF/COL) and "removing the reasoning it followed" in the Decision when it drafted the FOF/COL; (2) and (3) denying Husband's two motions for summary judgment; (4) finding that Husband made a fraudulent misrepresentation during the mediation; (5) finding that the "statement of material fact" element for fraudulent inducement was proven by the representation that an appraisal existed given that an appraisal is an opinion, not fact; (6) finding that Wife reasonably relied on the representation; (7) concluding that the mediation agreement was unconscionable and therefore unenforceable; (8) denying a motion to quash Wife's subpoena to mediators; (9) finding that a pre-marital economic partnership existed; (10) allowing Wife's testimony regarding the mediation over his hearsay objections; (11) awarding Wife sole legal and sole physical custody of the children; (12) retroactively adjusting child support to 2006; (13) not imputing income to Wife for child support purposes; (14) setting child support without a hearing; and (15) dividing the parties' property based on its

---

[2]     Husband's Amended Opening Brief does not adhere to Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b). In particular, the brief does not set forth "all supporting and contradictory evidence . . . in summary fashion, with appropriate record references[,]" HRAP Rule 28(b)(3) (emphasis added), does not specify "where in the record the alleged error occurred" for several errors, HRAP Rule 28(b)(4)(ii), and where the error involves the admission of evidence, he does not include "a quotation of the grounds urged for the objection and the full substance of the evidence admitted or rejected." HRAP Rule 28(b)(4)(A). Counsel is cautioned that future violations may result in sanctions.

conclusion that there was a premarital economic partnership and its rejection of the mediation agreement.

Upon careful review of the records and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant law, we resolve Husband's appeal as follows:[3]

(1) Husband objects to the family court's entry, upon the order by this court, of the FOF/COL on the basis that an earlier-filed Decision is longer and more descriptive, but the FOF/COL is summary and "eliminates the reasoning" in the Decision. Husband does not allege that the court eliminated necessary findings from the FOF/COL. When the FOF/COL and Decision are read together in their entirety as intended by the family court, they do not contradict each other. Even if the family court eliminated the reasoning found in the Decision when writing the FOF/COL, such a change would be irrelevant because we review the family court's conclusions of law de novo. Inoue v. Inoue, 118 Hawai'i 86, 93, 185 P.3d 834, 841 (App. 2008).

(2) and (3) The family court did not err in denying Husband's motions for summary judgment, which sought to enforce the mediation agreement, where several genuine issues of material fact existed. See Schenk v. Schenk, 103 Hawai'i 303, 309, 81 P.3d 1218, 1224 (App. 2003). The most significant of these facts, as noted in the family court, was whether the mediation agreement might be unconscionable, which could only be determined after fully reviewing the value of the marital estate, which was in dispute. Given that Husband failed to show that there was "no genuine issue as to any material fact" and that he was "entitled to judgment as a matter of law," the family court correctly denied him summary judgment. Id.

(7) The family court did not err by invalidating the mediation agreement on the basis that it was unconscionable.

---

[3]     We address Husband's points of error in non-sequential order.

Unconscionability encompasses two basic principles: one-sidedness and unfair surprise. Lewis v. Lewis, 69 Haw. 497, 502, 748 P.2d 1362, 1366 (1988). "[O]ne-sidedness would mean that the agreement leaves a post-divorce economic situation that is unjustly disproportionate. Unfair surprise would mean that one party did not have full and adequate knowledge of the other party's financial condition when the . . . agreement was executed." Id. (citation and internal quotation marks omitted).

Husband contends that the family court's conclusion that the mediation agreement was unconscionable erroneously relied on the finding that the property was acquired during a premarital economic partnership, which the family court determined at trial well after the agreement was signed. This argument fails because the facts relevant to whether the couple had a premarital economic partnership existed and were known to the parties at the time the mediation agreement was executed. Thus, the family court could consider them in making its unconscionability determination. See Lewis, 69 Haw. at 507, 748 P.2d at 1369 ("unconscionability of a provision governing division of property in a []marital agreement should be evaluated at the time the agreement was executed").

Second, assuming arguendo that Husband and Wife had no premarital economic partnership, the mediation agreement was unjustly disproportionate because it provided Wife with less than half of what she would be entitled to under the most favorable position that Husband could reasonably maintain at the time the agreement was signed.

Without an agreement to exclude the home from the marital partnership, the home was Marital Partnership Property and divisible under the five-category scheme outlined in Tougas v. Tougas, 76 Hawai'i 19, 27-28, 868 P.2d 437, 445-46 (1994). See also Helbush v. Helbush, 108 Hawai'i 508, 511-12, 122 P.3d 288, 291-92 (App. 2005). Without the mediation agreement, Husband could at most maintain that he deserved a Category 1 credit of $218,000 for the net market value of the home on the

date of marriage (DOM), and the couple should split any post-marriage appreciation. See id. Under such a scheme, and based on the $900,000 appraisal--the only appraisal that the parties showed was in existence at the time of the mediation, Wife would be entitled to fifty percent of the appreciation in the net market value of the home, or $257,500.[4] The mediation agreement calls for an equalization payment of $123,000, that is $134,500 less than her partnership share.

Husband's argument regarding the one-sidedness of the agreement is wrong because it does not subtract the mortgage outstanding on the date of marriage, which has the effect of inflating the Category 1 credit he claims.

We acknowledge that "a merely 'inequitable' contract is not unenforceable under contract law." Epp v. Epp, 80 Hawai'i 79, 85, 905 P.2d 54, 60 (App. 1995) (citation omitted). However, the question here is whether the disproportionate result of the mediation agreement rises to the level of being "unacceptably one-sided." See Lewis, 69 Haw. at 507, 748 P.3d at 1369. After a review of the record, we agree with the family court that the mediation agreement was unacceptably one-sided in favor of Husband. Under the agreement, Wife would receive less than half of what she would have received if the house were Category 1 property, despite that Wife argued she might have been entitled to more if the family court considered the home to be Category 5 property, without any offset. Husband did not agree to give Wife additional property, for example, a larger share of Husband's retirement, or make any other offsetting payment.

(4), (5) and (6) Because we conclude that the mediation agreement was unconscionable because it was unacceptably one-sided, we affirm the family court's determination that the mediation agreement was unenforceable without considering whether Wife was fraudulently induced to enter the agreement or whether

---

[4]     Taking into account the $167,000 outstanding mortgage.

the mediation agreement was unconscionable due to "unfair surprise."

(9) The family court did not err in finding that the couple had a premarital economic partnership. "[A] 'premarital economic partnership' occurs when, prior to their subsequent marriage, a man and a woman cohabit and apply their financial resources as well as their individual energies and efforts to and for the benefit of each other's person, assets, and liabilities." Helbush, 108 Hawai'i at 515, 122 P.3d at 295. Whether the parties cohabitated and had an economic partnership prior to marriage are questions of fact. See Jackson v. Jackson, 84 Hawai'i 319, 324, 933 P.2d 1353, 1358 (App. 1997). As such, the court's finding regarding the partnership is reversible only if it is clearly erroneous. See Inoue, 118 Hawai'i at 92, 185 P.3d at 841.

Husband claims that the family court's finding that the parties cohabitated prior to marriage "was an improper expansion of the definition of 'cohabitation[,]'" yet he offered no alternative definition for cohabitation at trial or on appeal. The family court's finding of cohabitation was based on the definition of the term in Black's Law Dictionary and Husband's and Wife's testimony. Giving "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses," Hawai'i Family Court Rules (HFCR) Rule 52(a), we conclude that the family court's finding of cohabitation is supported by the record and not clearly erroneous.

Similarly, the family court's finding that Husband and Wife had an economic partnership was not clearly erroneous. See Jackson, 84 Hawai'i at 332-33, 933 P.2d at 1366-67). Husband's position that the record "fail[s] to evidence a single 'financial resource' from [Wife] prior to the marriage" ignores the fact that the partnership model considers more than just monetary contributions to the partnership. See Helbush, 108 Hawai'i at 515, 122 P.3d at 295 (quoting Cassiday v. Cassiday, 68 Haw. 383, 387, 716 P.2d 1133, 1136 (1986) ("partners bring their financial

6

resources as well as their individual energies and efforts"). The unchallenged findings of fact establish that Wife contributed some "individual energies and efforts" to the construction of the home and Husband lived rent-free with Wife and with Wife's family, as a direct benefit of his relationship with Wife. The weight to be assigned to Wife's contributions was for the family court to decide. See Helbush, 108 Hawai'i at 515, 122 P.3d at 295. The family court's finding that the couple had a premarital economic partnership was supported by the record.

(8) The family court was not plainly arbitrary in refusing to quash the subpoena of the Mediation Center. The family court correctly noted that Hawai'i Rules of Evidence (HRE) Rule 408[5] does not grant a privilege to withhold information obtained in a mediation, because the rule is "a rule of admissibility." There was no privilege to withhold the mediation center's records. See HRE Rule 501 (there are no privileges from testifying, disclosure, or production of materials, except where provided by state or federal law or court rule). Therefore, the family court's denial of the motion to quash was not plainly arbitrary or erroneous. See Bank of Hawaii v. Shaw, 83 Hawai'i 50, 59, 924 P.2d 544, 553 (App. 1996) (interpreting Rule 45

---

[5] HRE Rule 408 reads:

**Compromise, offers to compromise, and mediation proceedings.** Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, or (3) mediation or attempts to mediate a claim which was disputed, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations or mediation proceedings is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations or mediation proceedings. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

District Court Rules of Civil Procedure (DCRCP), which is similar to HFCR Rule 45(b)).

The family court did not err in allowing Wife or mediators to testify on the basis that their testimony fell into the exception in HRE Rule 408. "[W]hether the evidence was offered for 'another purpose' and qualified as an exception to the general prohibition [in Rule 408]. . . requires a judgment call on the part of the trial court and is reviewed for abuse of discretion." Han v. Yang, 84 Hawai'i 162, 169, 931 P.2d 604, 611 (App. 1997). Fraud is clearly one of the circumstances that the legislature intended to exclude from Rule 408's prohibition on admitting mediation-related testimony. See H. Stand. Comm. Rep. No. 496, in 1989 House Journal, at 1023. Our review of the record reveals that Wife did not offer the testimony regarding what was said during mediation to prove how much she should receive in the property settlement, but rather to prove that her assent to the property division was fraudulently obtained. Thus, her testimony was not inadmissible under HRE Rule 408.

Neither Husband nor the Mediation Center relied on the Confidentiality Pledge signed by the parties and mediators in their arguments to prohibit testimony regarding the mediation. See Onaka v. Onaka, 112 Hawai'i 374, 386, 146 P.3d 89, 101 (2006) ("[t]he rule in this jurisdiction . . . prohibits an appellant from complaining for the first time on appeal of error to which he has acquiesced or to which he failed to object") (alteration in original, citation and internal quotation marks omitted). Furthermore, Husband abandoned this point on appeal, where he failed to present argument. See HRAP Rule 28(b)(7).

(10) Reviewing under the right/wrong standard, we conclude that the family court was correct when it decided that Wife's statements regarding Husband's "representation" during mediation about the value of the home were not hearsay. See Inoue, 118 Hawai'i at 93, 185 P.3d at 841. Hearsay is an out-of-court statement "offered in evidence to prove the truth of the matter asserted." HRE Rule 801. The family court accurately

assessed that Wife's testimony was not offered to show that there was an appraisal or that the property was worth $500,000, but rather to show the circumstances surrounding the mediation agreement's formation and to prove fraud.

(11) The family court did not err in granting sole physical and legal custody of the children to Wife. It is well established that "the best interests of the child standard is paramount when considering the issue of custody." Inoue, 118 Hawaiʻi at 105, 185 P.3d at 853 (citation omitted). The court's finding, although denominated as a conclusion of law, that it was in the children's best interest that Wife have sole legal and physical custody was supported by the record and not clearly erroneous.

Sole legal custody is consistent with the family court's Decision that Husband be "entitled to full access to all school and medical records" and "be informed . . . of all[ ] important issues and decisions affecting the children's welfare." Contrary to what Husband asserts in his Amended Opening Brief, the family court never "order[ed] that the parties agree on numerous legal custody issues[.]" The family court did not abuse its decision in awarding physical and legal custody of the children to Wife.

(12) Husband waived his point of error regarding the family court's "retroactive" adjustments to child support where his argument section is silent regarding this point. See HRAP Rule 28(b)(7) ("Points not argued may be deemed waived.").

(13) The family court did not err by not imputing income to Wife and excluding in-kind contributions that Wife received from her family as income in the child support calculations. Contrary to Husband's suggestion, the family court did not state that it could not impute income. Rather, in the paragraph of the Decision which he quotes in his Amending Opening Brief, the family court rejected Husband's reliance on Sussman v. Sussman, 112 Hawaiʻi 437, 146 P.3d 597 (App. 2006), which

concerned spousal support where this dispute concerned child support.

Husband argues on appeal that the family court should have imputed income to Wife because she was able to meet her monthly expenses in excess of her reported income without accumulating debt, but he provides no authority authorizing the family court to impute income on this basis.

He also argues that financial help that Wife received from her parents in the form of free or reduced rent and use of vehicles from the family's business should be considered income. This argument does not ask the family court to impute income, but rather to classify this aid as income from a "gift." The family court's finding that this assistance was a loan, not a gift, is supported by the record. Assuming arguendo that Wife's family's assistance was a gift, Husband failed to prove it was "continuous," as the Hawai'i Child Support Guidelines pertaining to a parent's income require. Instructions for the 2004 Hawai'i Child Support Guidelines, reprinted in 1 Hawaii State Bar Association, 2005 Hawai'i Divorce Manual, § 4, Appx. 3 (7th ed. 2005), available at http://www.state.hi.us/jud/Oahu/Family/2004csg/2004csg_ instructions.pdf, at 2.

Most importantly, the family court found "no specific figures were established at trial as to the amount of benefits [Wife] received from her parents, either in the aggregate or on a monthly basis." If such figures are documented in the record, Husband fails to cite to them in his briefs. "The burden is upon appellant in an appeal to show error by reference to matters in the record." Bettencourt v. Bettencourt, 80 Hawai'i 225, 230, 909 P.2d 553, 558 (1995) (citation and internal quotation marks omitted).

(14) The family court did not abuse its discretion in making the determination of child support based on the parties' written submissions. HFCR Rule 78 permits the family court to determine motions "without oral hearing upon brief written

10

statements." The rules cited by Husband provide no basis to require a hearing before the entry of a child support order, nor did he request one below. Accordingly, this point is without merit.

(15) The family court did not err in dividing the marital property. The mediation agreement was not a valid contract such that the residence could be considered Marital Separate Property. See Helbush, 108 Hawai'i at 512,122 P.3d at 292. As noted above, the family court did not clearly err in determining that Husband and Wife had a premarital economic partnership that pre-dated the purchase of the residence. See id. at 513, 122 P.3d at 293; see also Doe v. Roe, 123 Hawai'i 299, 233 P.3d 719, No. 28596 2010 WL 2535138, at *7 (App. June 23, 2010) (mem.). Thus, the residence could not be considered Husband's "contribution to Marital Partnership Property" where it was acquired during the partnership such that Husband was not entitled to repayment for his contribution. Helbush, 108 Hawai'i at 513-14, 122 P.3d at 293-94 (citing Hussey v. Hussey, 77 Hawai'i 202, 207-08, 881 P.2d 1270, 1275-76 (App. 1994)). The residence was correctly classified as Category 5 property. See id. at 512, 122 P.3d at 292. The family court did not err in so finding and dividing the property accordingly.

Therefore,

IT IS HEREBY ORDERED that the Family Court of the Third Circuit's July 21, 2010 Divorce Decree and the July 21, 2010 order regarding the child support arrearage and monthly payment are affirmed.

DATED: Honolulu, Hawai'i, February 23, 2012.

On the briefs:

David H. Lawton,
for Defendant-Appellant.

Robert K. Allen and
William J. Rosdil,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge